Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

_UD_ District of _Illinois_

_Eastern_ Division

RECEIVED

SEP 27 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

_Mary Beth Burke_

Plaintiff(s)

(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)

_Department of Interior
Bureau of Indian Affairs
Bureau of Indian Education_ et al

Defendant(s)

(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.)

)
)
)
)
)
)
)
)
)
)
)
)
)

**1:19-cv-06459**

**Judge John Robert Blakey**

**Magistrate Judge Susan E. Cox**

Jury Trial: (check one) ☐ Yes ☑ No

_Plaintiff Burke was denied a court-appointed
lawyer when she originally filed this case.
Burke closed the case, w/o prejudice because
she could not retain counsel.
Burke hopes to resurrect this case in Chicago,
with a Chicago court-appointed lawyer.
The OSC would not assist Burke.
The BIA ignores Senator Durbin's requests for
information._

# COMPLAINT FOR A CIVIL CASE

_Defendant BIE posted false information on
its website regarding policies/procedures for
BIE employees to take regarding whistleblowing/PPPs,
thus wasting 7 months of Plaintiff's attempt to
get a measure of justice._

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if
needed.

Name _Mary Beth Burke_

Street Address _1646 Hannah Ln._

City and County _Pingree Grove     Kane_

State and Zip Code _IL     60140_

Telephone Number _928-769-6611_

E-mail Address _marybethburke.08090@gmail.com_

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an
individual, a government agency, an organization, or a corporation. For an individual defendant,
include the person's job or title (if known). Attach additional pages if needed.

A-2

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

Name — *Department of Interior et al*

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Defendant No. 2

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

*Please request original case copy. Copy of all filed previously.*

Defendant No. 3

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Defendant No. 4

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

 ✓ Federal question           ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Civil Rights

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)*    Mary Beth Burke                  , is a citizen of the

State of *(name)*    Illinois                              .

b.    If the plaintiff is a corporation

The plaintiff, *(name)*                                    , is incorporated

under the laws of the State of *(name)*                                            ,

and has its principal place of business in the State of *(name)*

.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)*                                    , is a citizen of

the State of *(name)*                                    . Or is a citizen of

*(foreign nation)*                                    .

Page 3 of 5

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

b.  If the defendant is a corporation

The defendant, *(name)*        USA Dept. of Interior et al, is incorporated under

the laws of the State of *(name)*                                    , and has its

principal place of business in the State of *(name)*                        .

Or is incorporated under the laws of *(foreign nation)*                    ,

and has its principal place of business in *(name)*                        .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.  The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.   **Statement of Claim**

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

## IV.   **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    *Sept. 17, 2019*

Signature of Plaintiff    *Mary Beth Burke*
Printed Name of Plaintiff    *Mary Beth Burke*

### B.    For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

*AL*

**BURKE v. DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS, BUREAU OF INDIAN EDUCATION, et al**

**Case number: 3:17cv08090**
**Original case filed:** May 11, 2017    Phoenix

**Related case:** Stephen C. v. Bureau of Indian Education, cv-17-08004, pending in Phoenix

**Related case:** Burke v. Chicago School Reform Board of Trustees, original case filed April 30, 2001

Re-filed September 2019 for special consideration/filed concurrent with this case

**Plaintiff Burke** requests that the original case, filed in Phoenix, cv-08090, be electronically transferred to the Chicago courts. See attached documents for pertinent information.

# BACKGROUND

Plaintiff Mary Beth Burke filed a lawsuit against the Department of Interior, Bureau of Indian Affairs, Bureau of Indian Education, et al, on May 11, 2017. Her case was filed with the Sandra Day O'Connor Courthouse in Phoenix, AZ. With her original filing, Plaintiff Burke filed a motion, in forma pauperis, requesting a court-appointed lawyer. The judge assigned to her case denied her motion for a court-appointed lawyer, stating there was no precedent. *Note: Precedent was set in 2001, when Judge Ruben Castillo accepted Burke's motion for a court-appointed lawyer in Burke v. Chicago School Reform Bd. of Trustees, et al 2001*

Plaintiff Burke contracted many law firms in AZ, NY and California. Nobody was willing to take her case on contingency fee basis. The lowest amount quoted by any firm was a $30,000.00 retainer fee. Burke had/has no funds. Burke called the law firms representing her former students and their schoolmates in the aforementioned related case. Havasupai Elementary School students are represented by Sacks Tierney PA, Munger Tolles & Olson Llp- Los Angeles, CA, Public Counsel, Native American Disability Law Center, and the ACLU. Each student has 14 lawyers on record. Each group told Burke that it would be a conflict of interest to represent her.

Due to the fact that Burke could not retain counsel and she could not financially, physically, emotionally or intellectually take on the US government, she withdrew her case without prejudice on December 13, 2017.

In August 2017, Burke filed a case with the OSC against the same defendants, with the same complaints. She felt the OSC might be able to assist her in a more expedient manner than a lawsuit. Burke's intention was to drop the lawsuit if the OSC remedied the situation.

Burke decided that the OSC could be an alternate path to take regarding her whistleblowing and PPP's against the government.

Burke made the decision to contact the OSC based on information contained on the official website of the BIE. The defendant BIE official website posts the following official OSC documents:
   A. Prohibited Personnel Practices
   B. Whistleblower Retaliation 5-USC-2302(b)(8)
   C. Know Your Rights When Reporting Wrongs

The BIE makes it very clear, via OSC documents posted on the BIE website, that the OSC is the official agency to contact regarding whistleblower and PPP complaints.

On August 2, 2017, Plaintiff Burke received an email from the OSC informing her that Timothy Cheng would be handling her case. She was also assigned a case number: MA-17-4805.

On November 13, 2017, Plaintiff received an email from Cheng informing her that he was in the process of reviewing her complaint.

On November 21, 2017, Cheng informed Burke via email that he would like to set up a phone conference to interview her.

On December 14, 2017, Cheng called Burke to interview her about her case.

On January 12, 2018, Cheng informed Burke that he received her information and that he would review it before making a determination.

On January 23, 2018, Cheng informed Burke that her case was still under active consideration.

On March 6, 2018, Cheng informed Burke that he expected to make a recommendation that month.

On March 15, 2018, Burke received an email from the OSC stating that the OSC determined that BIE contract education personnel are outside of OSC lawful jurisdiction. He stated that according to the BIA Manual (BIAM) the OSC has no authority to review Burke's complaint. He closed the case.

The OSC kept Plaintiff's case for 7 months. They accepted her complaints. They interviewed Plaintiff by phone. They interviewed some defendants. At one point, Cheng said he could probably look into getting Plaintiff's termination dropped, but that was about all he could do. Burke told him that was not an option because actions taken against her were too egregious and she had suffered financially.

After 7 months the OSC closed Plaintiff's case informing her that they had no jurisdiction in the matter. Cheng told Plaintiff that there was a little known law, even at the OSC, that they couldn't handle cases involving the BIE. Plaintiff Burke feels the OSC should not have accepted her case in the first place; knowing they had no jurisdiction.

Plaintiff Burke believes there is some element of fraud involving the BIE. She is unsure the role the OSC plays in the BIE's actions. Plaintiff Burke followed the instructions given her via official BIE website to report her concerns to the OSC. Several official documents, OSC publications, were posted on the website regarding whistleblowing and PPPs.

The OSC opened Burke's case, gave her a case number, assigned an OSC attorney (Tim Cheng) to investigate the case, informed her the case was ongoing, and then summarily closed the case, claiming they have no jurisdiction. The OSC referred to the Bureau of Indian Affairs Manual (BIAM) and quoted BIAM procedure/policy as a reason to drop Burke's case. Plaintiff feels that the OSC believed that the BIAM trumped federal law.

In addition, the OSC made their decision to drop Burke's case based on the BIAM when in fact the BIAM is obsolete and hasn't been the official manual in many years. Cheng was in error when he made a determination based on an obsolete policy manual.

Former students of Plaintiff Burke and their schoolmates have filed a lawsuit against the government: Stephen C. v. BIE. The 14 lawyers representing the students are not referring to any manual put out by the BIE, they are basing the case on applicable federal law.

Applicable federal law should apply to Burke's case as well; not an obsolete manual once published by the BIE.

In July 2018, Plaintiff Burke reached out to Senator Dick Durbin. She explained the situation regarding the BIE, the OSC, … She requested Durbin's office to find out which group, if not the OSC, handles complaints of whistleblowing and PPPs made by a former federal employee.

The BIA has ignored Durbin's inquiries, up to present time (September 2019). Burke feels that if the BIA/BIE ignores a well-respected, senior senator, she has no opportunity to receive a measure of justice in her case.

The BIE has a history of being grossly mismanaged with no accountability to anybody; especially in regards to finances.

The BIE is impenetrable regarding any claims made against them.

Due to the fact that:

1. Burke's civil rights were egregiously violated by the BIE
2. The BIE intentionally deceived Burke (and other BIE employees) to believe that the official policy and procedure for reporting whistleblowing and PPPs was to the OSC
3. The BIE has official OSC posters regarding whistleblowing and PPPs on the official BIE website, thus acknowledging that they are the true and correct agency for BIE whistleblowers and those with PPPs to approach.
4. The OSC accepted Burke's case, they assigned a case number, they assigned one of their attorney representatives, they interviewed Burke and others, they prolonged the decision-making process and then made a decision that they have no jurisdiction in cases involving the BIE claiming that the decision was made by referring to the Bureau of Indian Affairs Manual (BIAM).
5. The BIAM is obsolete and was obsolete when Cheng made his determination in Burke's case.
6. Federal law is the law being applied in Stephen C. v. BIE (students' case). Fourteen lawyers for the students are not referring to some obsolete policy manual put out by the BIA/BIE.
7. That the BIA/BIE has ignored Senator's Durbin's request for information
8. The BIA, BIE and the OSC have thwarted and hindered Burke's attempt to make herself whole via the judicial process.
9. The effort to deny Plaintiff any chance at receiving a measure of justice in her case is intentional and continues to present day.

For all the aforementioned reasons, Plaintiff Burke feels that any statute of limitations in Burke's attempt to resurrect her case be lifted. Defendants interfered with the judicial process in an effort to deny Burke's right to be heard in the judicial process.

Burke is a resident of Kane County, Illinois. Burke requests her original case, cv 08090, be electronically transferred from the Phoenix courthouse to the Chicago courthouse. Burke requests an expedited hearing before a judge and she is filing a motion for a court-appointed lawyer to represent her.

## BURKE v. DEPARTMENT OF INTERIOR, BIA AND BIE, et al
## Case Number: cv-08090

## CLAIM

Plaintiff Burke is blacklisted from her profession due to the actions of the defendants. The first thing any prospective employer sees on a job application is the last place of employment and the application asks if the candidate was terminated. A little box is included for an explanation.

Burke claims she is and remains blacklisted; despite the little box. No prospective employer will believe the federal government could be derelict in the way it handled the school, the students and the teachers. Burke was the third of eight professional staff terminated during her short term of employment with the BIE. The school had a revolving door of teachers for years, and Burke was just one more teacher to go through the revolving door. Burke questioned some practices by officials and she tried to advocate for a suicidal child and for a special education student. School officials had to prevent any institutional memory of the school.

Plaintiff Burke claims the termination will prevent her from ever gaining employment. The termination has affected her health and well-being.

For the government to willfully and wantonly destroy her life, Burke requests that the court make her whole, via an expedited hearing before a federal judge. Burke is 62 years old and her years remaining to teach are limited. Burke's claims for compensation are listed in the original filing, cv-08090.

In addition, Plaintiff Burke claims that the BIE duped her and other BIE employees into believing they could approach the OSC for assistance with whistleblowing and PPPs and by claiming they would be protected.

In addition, Plaintiff Burke claims that the BIA/BIA are stonewalling Senator Durbin in his attempt to try to assist a constituent.

In addition to Burke's claims contained in the original filing, Plaintiff Burke is requesting an additional one million dollars in punitive damages against the BIA/BIE for intentionally duping her regarding policy and procedures in an effort to protect themselves from public scrutiny and possible court-ordered settlement payments to Plaintiff Burke.

# BURKE v. DEPARTMENT OF INTERIOR, BIA, BIE, et al

# Original case:  cv-08090

# RELIEF

A.   Plaintiff Burke requests relief in the amounts and terms listed within her original filing: cv-08090.
B.   In addition, Plaintiff Burke requests an additional one million dollars in punitive damages due to the fact that the BIA/BIE intentionally thwarted Burke's efforts to have her day in court by interfering with the judicial process by posting official documents from the OSC on the official BIE website; giving Burke (and other BIE employees) fraudulent information meant to make her believe there was recourse available and that she would be protected.  As it is, the OSC claims to have nothing to do with representing official BIE whistleblowers.  The BIA/BIE dupes its employees in an effort to interfere with the statute of limitations and to protect themselves from public scrutiny and possible court-ordered settlements.
C.   Plaintiff Burke requests an immediate reversal of her termination.

Burke v. Department of Interior
BIA/BIE et al

# EXHIBITS

## Table of Contents

**Ex. A :** copy of email from OSC Attorney, Timothy Cheng

**Ex. B :** copy of document indicating OSC Timothy Cheng's determination regarding my case was based on an obsolete manual.

**Ex. C :** email to Plaintiff from Senator Durbin. The BIE is stonewalling the senator.

**Ex. D :** Official posters from the OSC, posted on the official BIE website: policies and procedures for BIE whistleblowers /PPP complaints

**Ex. E :** List of 14 lawyers representing students in a related case.

**Ex. F :** Various newspaper articles about the lawsuit filed by the students in a related case. One article of Plaintiff.

# EXHIBIT A

This is a copy of an email from Attorney Timothy Cheng, OSC.

The OSC kept my case for 7 months. Cheng was assigned to the case. I was given a case number. Cheng interviewed me and others. Then he closed the case stating the OSC has no jurisdiction over BIE teachers. He based his decision on the Bureau of Indian Affairs Manual (BIAM). The BIAM is obsolete. Cheng based his decision on a manual which has been obsolete for years. (see next exhibit) to drop my case based on a manual which has

In addition, the BIE, on its very own website, posts several documents instructing BIE employees to take whistleblowing and PPP concerns to the OSC. (see exhibit) Plaintiff Burke feels the Defendant posted such documents in an effort to make sure plaintiffs wasted their time and effort in pursuing justice. Burke feels there is a measure of fraud on the part of the BIE to intentionally post policies/procedures known to be false postings.



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 218
Washington, D.C. 20036-4505
202-804-7000

March 15, 2018

*Sent via electronic mail*
Mary Burke
1646 Hannah Lane
Pingree Grove, IL 60140
marybethburke08090@gmail.com

### Re: OSC File No. MA-17-4805

Dear Ms. Burke:

This letter is in response to the above-captioned complaint you filed with the U.S. Office of Special Counsel ("OSC") against the Bureau of Indian Education, Bureau of Indian Affairs ("BIE"). OSC is authorized to investigate allegations of prohibited personnel practices and certain activities prohibited by civil service law, rule, or regulation. 5 U.S.C. §§ 1214(a)(1)(A), 1216(a) and 2302(b). Based on our evaluation of the facts and the law, we are closing our file in this matter.

To explain, you were a former Contract Education Teacher (CY-1710-14) brought in under Teacher/Counselor Employment Contracts. You claim the BIE brought you in under false pretenses and violated various laws, rules, or regulations in its hiring and termination processes. You also claim the BIE retaliated against you for making protected disclosures.

OSC would normally analyze your allegations for potential violations of 5 U.S.C. § 2302(b)(8) and § 2302(b)(12). However, OSC has determined that contract education personnel are outside of OSC's lawful jurisdiction. Pursuant to 25 U.S.C. § 2012(a), contract education personnel are not subject to Title 5's civil service provisions related to classification, pay and leave, appointment, promotion, and removal. *See also* 25 C.F.R. part 38. Instead, BIE contract education personnel are organized and managed according to the Bureau of Indian Affairs Manual ("BIA Manual"). *See* 62 BIA Manual 11.

Absent jurisdiction over BIE contract education personnel, OSC has no authority to review your complaint. We regret that we are unable to assist you.

Sincerely,

Timothy D. Cheng
Attorney
Complaints Examining Unit
U.S. Office of Special Counsel

# EXHIBIT B

This exhibit demonstrates that the Bureau of Indian Affairs Manual (BIAM) is obsolete.

OSC Attorney Tim Cheng was in error when he based his decision that the OSC has no jurisdiction in my case based on an obsolete manual.

There is a class-action lawsuit, on-going, in Phoenix. Students are suing for their right to an education. Fourteen lawyers are basing their arguments on federal law; not any manual published by the BIE.



U.S. Department of the Interior

# Indian Affairs

🔍

**About Us**     **Programs & Services**     **Policy & Forms**

**Regional Offices**     **Consultations**     **Jobs**

Home / Policy & Forms / (Historic) Bureau of Indian Affairs Manual (BIAM)

# (Historic) Bureau of Indian Affairs Manual (BIAM)



In 1997, the Deputy Commissioner of Indian Affairs sent a memorandum to IA leadership and programs informing them that the BIAM would be replaced with the new Indian Affairs Manual (IAM). Programs are required by the Federal Records Act (44 U.S.C. 3101), the Administrative Procedures Act (5 U.S.C. 552), and 381 Department Manual (DM) 1 to properly document the functions, policies, and essential transactions of the organization. From 1997 - 2003, multiple release memos and conversion tables were created to document the conversion of BIAM Parts/Chapters to IAM Parts/Chapters. Two policy releases-- in 2004 and in 2008-- again confirm that the BIAM was to be fully superseded by the IAM. In February 2016, the Acting AS-IA released a **memorandum** reiterating the importance of policy development and reminding IA programs that they should no longer be relying on BIAMs.



The content of many of the BIAMs has been superseded-- by changes in technology, organization, the law, new processes, responsible parties, and so forth. Wherever possible, it has been noted which BIAM Parts/Chapters have been replaced by updated IAM Parts/Chapters, though this is still a work in progress. IAM Titles marked with an asterisk (*) are either in the process of being updated by the responsible office, or have not yet been updated by the responsible office; the IAM Part/Chapter/Title is therefore a placeholder.  In cases where a BIAM Part/Chapter has not been replaced by an IAM Part/Chapter, the BIAM does not necessarily 'apply.'

It's important to note that the BIAM Parts/Chapters do not generally correspond to the IAM Parts/Chapters. For example, the BIAM, "Information Resources Management" (Part 35) has been superseded by the updated IAM, "Information Resources" (Part 60). **If a link is not provided to the BIAM, it means an electronic version is not yet available.**

✳ *NOTE: The OSC made a decision to not accept my case based on the BIAM- an obsolete manual.*

# EXHIBIT C

Plaintiff Burke approached Senator Dick Durbin's office to find out if the OSC has jurisdiction over BIE teachers and if not — who has jurisdiction over whistleblowing/PPPs made by BIE teachers.

Senator Durbin is being stonewalled.

The BIE answers to nobody.

RICHARD J. DURBIN

ILLINOIS

DEMOCRATIC WHIP

COMMITTEE ON AGRICULTURE,
NUTRITION, AND FORESTRY

COMMITTEE ON APPROPRIATIONS

COMMITTEE ON THE JUDICIARY

COMMITTEE ON RULES
AND ADMINISTRATION

# United States Senate
### Washington, DC 20510–1304

September 17, 2019

Mary Beth Burke
1646 Hannah Lane
Pingree Grove, IL 60140-5416

Dear Mary:

In our efforts to keep you apprised on your case, please be advised that we have resubmitted a
letter and your documents to the U.S. Department of Interior, Bureau of Indian Affairs on this
date, because we have not yet received a response to our initial inquiry.

We will continue to keep you up to date on this matter. If you have any questions, please feel
free to contact me.

Sincerely,

Richard J. Durbin
United States Senator

RJD/aa



711 HART SENATE OFFICE BUILDING
WASHINGTON, DC 20510–1304
(202) 224-2152

230 S. DEARBORN STREET
SUITE 3892
CHICAGO, IL 60604
(312) 353-4952

525 SOUTH EIGHTH STREET
SPRINGFIELD, IL 62703
(217) 492-4062

1504 THIRD AVENUE
SUITE 227
ROCK ISLAND, IL 61201
(309) 786-5173

250 W. CHERRY STREET
SUITE 115-D
CARBONDALE, IL 62901
(618) 351-1122

durbin.senate.gov

# EXHIBIT D

The following documents are official OSC posters contained within the BIE website.

The BIE makes it very clear that the OSC is the agency to contact regarding whistleblowing & PPPs.

Plaintiff Burke feels that there is an element of fraud on the part of the BIE; Knowingly posting policies/procedures for federal employees to take for reporting whistleblowing /PPPs, which are false.



*Exhibit*
*This document is on the official OSE website.*

# Prohibited Personnel Practices

## By law, Federal employees may not:

- Discriminate
- Solicit or consider employment recommendations based on factors other than personal knowledge or records of job related abilities or characteristics
- Coerce the political activity of any person
- Deceive or willfully obstruct any person from competing for employment
- Influence any person to withdraw from job competition
- Give an unauthorized preference or advantage to improve or injure the prospects of any particular person for employment
- Engage in nepotism

- Take or threaten to take a personnel action because of whistleblowing
- Take or threaten to take a personnel action because of the exercise of a lawful appeal, complaint, or grievance right
- Discriminate based on personal conduct which does not adversely affect the performance of the employee or other employees
- Knowingly take or fail to take personnel action in the violation of veteran's preference laws
- Violate any law, rule or regulation implementing or directly concerning merit system principles
- Implement or enforce a nondisclosure agreement or policy lacking notification of whistleblower rights

## More information may be obtained from:

**U.S. OFFICE OF SPECIAL COUNSEL**
**1730 M STREET, N.W., SUITE 218**
**WASHINGTON, DC 20036-4505**
**WWW.OSC.GOV**

**PHONE: (202) 254-3600*    TOLL FREE: 1-800-872-9855***
***Hearing and Speech Disabled: Federal Relay Service 1-800-877-8339**

A2

Rev. 02/13



*Exhibit*
*This document is on the official BIE website.*

# WHISTLEBLOWER RETALIATION
*—5 U.S.C. § 2302(b)(8)—*
# THE U.S. OFFICE OF SPECIAL COUNSEL

### What is whistleblower retaliation?

A federal employee authorized to take, direct others to take, recommend, or approve any personnel action may not take, fail to take, or threaten to take any personnel action against an employee because of protected whistleblowing.

*EXAMPLE: A supervisor directs the geographic reassignment of an employee because the employee reported safety violations to senior agency officials.*

### Protected whistleblowing is defined as disclosing information that the discloser reasonably believes evidences:

1. a violation of law, rule, or regulation;
2. gross mismanagement;
3. gross waste of funds;
4. an abuse of authority; or
5. a substantial and specific danger to public health or safety.

This section also prohibits retaliation against government scientists who challenge censorship or make disclosures concerning the integrity of the scientific process if the censorship will cause one of the five types of misconduct described above.

### What can you do if you believe whistleblower retaliation has occurred?

If you believe that you have been subject to retaliation for protected whistleblowing you can file a complaint with the U.S. Office of Special Counsel (OSC). OSC is an independent agency that investigates and prosecutes allegations of prohibited personnel practices (PPP) by federal employees. OSC has the authority to investigate PPPs, including allegations of whistleblower retaliation, and may seek corrective or disciplinary action when warranted.

**U.S. Office of Special Counsel**
1730 M Street, N.W., Suite 218 | Washington, D.C. 20036
Tel: (202) 254-3600 | Fax: (202) 254-3711 | TTY: 1-800-877-8339 |
**www.osc.gov**



Rev. 04/2015



*Exhibit*
*This document is on the official BIE website.*

# KNOW YOUR RIGHTS WHEN REPORTING WRONGS

Whistleblower disclosures can save lives as well as billions of taxpayer dollars. They play a critical role in keeping our government honest, efficient and accountable. Recognizing that whistleblowers root out waste, fraud and abuse, and protect public health and safety, federal laws strongly encourage employees to disclose wrongdoing. Federal laws also protect federal employees from retaliation.

The U.S. Office of Special Counsel (OSC) plays an important role in helping whistleblowers. OSC is an independent agency that protects federal employees from "prohibited personnel practices," including whistleblower retaliation and unlawful hiring practices, such as nepotism. OSC also provides an independent, secure channel for disclosing and resolving wrongdoing in federal agencies. This guide provides a summary of whistleblower protections and avenues available to employees to disclose wrongdoing. For more information, please visit OSC's website at www.osc.gov.

## Where can I report wrongdoing?

Current and former federal employees and applicants (henceforth "federal employees") can report on any of the following types of wrongdoing:

· a violation of any law, rule, or regulation,
· gross mismanagement,
· a gross waste of funds,
· an abuse of authority, or
· a substantial and specific danger to public health or safety.

Federal employees have many options on where to disclose wrongdoing, including but not limited to, making disclosures to supervisors or someone higher up in management; agency's Inspector General (IG); OSC; or, Congress. For whistleblower disclosures involving classified national security information or other information protected from public release by law (e.g. patient privacy information), whistleblowers must use confidential channels such as an IG, OSC, or Congress in order to be protected from adverse personnel actions related to their disclosures.

OSC has jurisdiction to protect federal employees at most agencies from retaliation for filing an appeal, complaint, or grievance; helping someone else file or testifying on their behalf; cooperating with or disclosing information to the Special Counsel or an Inspector General; or, refusing to obey an unlawful order.

## Can I keep my identity confidential?

Yes. Most Inspectors General have hotlines that allow employees to make confidential disclosures. Inspectors General are prohibited from disclosing an employee's identity unless the IG determines that disclosure is unavoidable or is compelled by a court order. If you file a disclosure with OSC, your identity will not be shared outside of OSC without your consent. However, OSC may disclose your identity only if OSC determines that it is necessary because of an imminent danger to public health or safety or an imminent violation of any criminal law.

## What will OSC do once I make a disclosure?

When a federal employee discloses wrongdoing to OSC, OSC evaluates the information and interviews the federal employee. OSC determines whether it is substantially likely that the employee's allegation – or any portion of it – can be proven and whether it discloses a violation of a law, rule, or regulation; gross mismanagement; a gross waste of funds; an abuse of authority; or a substantial and specific danger to public health or safety. If it meets that standard, OSC will require the agency to investigate and submit a report of the agency's findings to OSC. The whistleblower then has an opportunity to comment on the agency report. Those comments, together with any comments or recommendations by the Special Counsel, are sent with the agency report to the President and congressional oversight committees. The agency report is usually made available to the public.

## Are whistleblowers protected from retaliation?

Yes. The Whistleblower Protection Act prohibits retaliation. This means it is unlawful for agencies to take or threaten to take a personnel action against an employee because he or she disclosed wrongdoing. Personnel actions can include poor performance review, demotion, suspension, or termination.

However, disclosures of information specifically prohibited by law or required by Executive Order to be kept secret are protected only when made to an OIG, OSC, or Congress. Additionally, federal law establishes that a federal employee has the right to communicate with and provide information to Congress.

## What can you do if you believe retaliation occurred?

If you believe that an agency has retaliated against you because of your whistleblowing or because you engaged in protected activity such as disclosing information to an Inspector General, you can:

· file a complaint with OSC, which may seek corrective action when warranted;
· file a union grievance; or
· if you have been subject to a significant personnel action, you can file an appeal with the Merit Systems Protection Board (MSPB; www.mspb.gov) and assert retaliation as a defense.

Note that a federal employee may choose only one of these three options when appealing a significant personnel action.

## What relief is available to an employee who has suffered retaliation?

Many forms of relief are available. They include job restoration, reversal of suspensions and other adverse actions, back pay, reasonable and foreseeable consequential damages, such as medical costs, attorney fees, and compensatory damages. In addition, damages may be awarded for attorney fees and expenses incurred due to retaliation.

## Can the OSC delay a personnel action while the matter is investigated?

Yes. An individual may ask OSC to delay, or "stay," an adverse personnel action pending an investigation. OSC will consider requesting a delay of a personnel action if OSC has reasonable grounds to believe that a prohibited personnel action was taken and, absent a stay, the employee will be subjected to immediate and substantial harm, such as removal, suspension for more than 14 days, or geographic reassignment.

## How can the OSC remedy a prohibited personnel practice?

Federal employees may report suspected prohibited personnel practices (PPPs) to OSC. Their complaint will be investigated. If there is sufficient evidence to prove a violation, OSC can seek corrective action, disciplinary action, or both. Alternatively, parties in selected cases may agree to mediate their dispute in order to reach a mutually agreeable resolution of the complaint. OSC may attempt to resolve a case with an agency at any stage. If an agency refuses to provide corrective action, then OSC can take the case to the MSPB. The MSPB can order the agency to take corrective action. Such litigation begins with the filing of a petition by OSC that alleges there are reasonable grounds to believe a prohibited personnel practice occurred, is occurring, or is imminent.

## Can a manager be held accountable for retaliating against a federal employee?

Yes. OSC may seek disciplinary action against any employee who commits a prohibited personnel practice. If an agency fails to take disciplinary action, then OSC can bring a disciplinary action case to the MSPB against the employee who committed the prohibited personnel practice. If the MSPB finds that an individual has committed a prohibited personnel practice, it can order disciplinary action, including removal, reduction in grade, debarment from federal employment for up to five years, suspension, reprimand, or a fine of up to $1,000.

*For more information on prohibited personnel practices (PPPs), including retaliation, go to www.osc.gov/ppp.*
*To learn more about filing a whistleblower disclosure with OSC, go to www.osc.gov/disclose.*
*To file a PPP complaint or whistleblower disclosure with OSC, go to www.osc.gov/efile.*

## U.S. Office of Special Counsel

1730 M Street, N.W., Suite 218 | Washington, D.C. 20036
Tel: (202) 254-3600 | Fax: (202) 254-3711 | TTY: 1-800-877-8339 |

## www.osc.gov

Rev. 06/2015

📧 Monday February 11, 2019

# <u>BIE Website</u>

[GO]

- <u>BIE Home</u>
- <u>HR Home</u>
- <u>What's New</u>
- <u>Jobs</u>
- <u>Employee Resources</u>
- <u>Recruiting</u>
- <u>Forms</u>
- <u>Training</u>
- <u>FAQs</u>
- <u>Contact Us</u>



*Note: This document is the Employee & Labor Relations index to links for the OSC – instructing employees to go to the OSC with whistleblower/PPPs complaints.*

<u>Home</u> <u>Human Resources</u> <u>Employee Resources</u> Employee & Labor Relation Programs

## Employee & Labor Relations Programs

Indian Educators Federation (IEF) Contract

- <u>Main Body</u>
- <u>Definitions</u>
- <u>Appendices A-O</u>
- <u>Appendix P (SCAN Protocol).</u>

Employee Resources

- <u>Personnel Bulletin 11-12, September 19, 2011: Understanding and Responding to Workplace Violence</u>
- <u>Employee Responsibilities and Standards of Conduct - 44BIAM, Chapter 735</u>
  - <u>43 CFR Part20</u>
- <u>Inclement Weather Guidelines</u>
- <u>370 DM 771 ~ Administrative Grievance Procedures</u>
- <u>Merit System Principles</u>
- <u>Prohibited Personnel Practices</u>
- <u>370 DM 752 ~ Discipline and Adverse Actions</u>



NOTE

A²

2/11/2019

Posters

- Family Medical and Leave Act of 1993
- Military Family Leave (NDAA)
- Hatch Act
- Know Your Rights When Reporting Wrongs
- Whistleblower Retaliation
- Whistleblowing
- Prohibited Personnel Practices (PPP)
- Your Rights as a Federal Employee (PPP)
- What A Federal Employee Should Do When Injured At Work
- OSHA for Inteiror Employees



Annual Notices

2017 Weingarten Notice

Other Useful Websites

- OPM Employee Relations Page
- OPM Labor Relations Page
- OPM Information on Leave & Leave Administration
- OPM Handbook on Alternative Work Schedules

Awards & Recognition Programs

- IA Awards Policy (28 IAM 452 Awards and Recognition)
  - FAQs regarding Awards & Recognition Programs

- Employee Resources
- Policies & Guidance
- Pay, Benefits & Retirement
- HR IT Systems
- External Resources

- Employee Assistance Program
- Performance Management & Awards

- Need more info?
  Contact Glenn at 505-563-5323

# **BIE Website**

- Site Map
- |
- Accessibility
- |
- Contact Us
- |
- Feedback
- |
- Notices
- |
- Disclaimer
- |
- Privacy
- |
- Home
- 
- FOIA
- |
- No Fear Act Data
- |
- E-Gov
- |
- USA.gov
- |
- USAJobs.gov

# EXHIBIT E

A list of the 14 lawyers, registered with the court, representing the students in a related case.

The government was so derelict in the way it managed the Havasupai School for many years, that I became a victim, just like my former students.

I pray this court will appoint a lawyer to help me.
I should not have to live in poverty and have no opportunity to ever teach again based on actions taken by those who have perpetuated institutional neglect.

# Stephen C et al., al v. Bureau of Indian Education et al.,

**Arizona District Court**                                      Case Filed:        Jan 12, 2017

| | |
|---|---|
| **Judge:** | Steven P Logan |
| **Case #:** | 3:17-cv-08004 |
| **Nature of Suit** | 448 Civil Rights - Education |
| **Cause** | 28:1331 Federal Question: Other Civil Rights |

Docket | Parties (18)

Last checked: **Tuesday Jul 11, 2017 2:23 AM MST**

**Defendant**
Michael Black

**Represented By**
Cesar A. Lopez-Morales
*Us Dept Of Justice - Civil Division*
contact info

Lisa Ann Olson
*Us Dept Of Justice - Civil Division*
contact info

**Defendant**
Ryan Zinke

**Represented By**
Cesar A. Lopez-Morales
*Us Dept Of Justice - Civil Division*
contact info

Lisa Ann Olson
*Us Dept Of Justice - Civil Division*
contact info

**Defendant**
Bureau of Indian Education

**Represented By**

Cesar A. Lopez-Morales
*Us Dept Of Justice - Civil Division*
contact info

Lisa Ann Olson
*Us Dept Of Justice - Civil Division*

contact info

---

**Defendant**
Tony Dearman

**Represented By**

Cesar A. Lopez-Morales
*Us Dept Of Justice - Civil Division*
contact info

Lisa Ann Olson
*Us Dept Of Justice - Civil Division*
contact info

---

**Defendant**
United States Department of the Interior

**Represented By**

Cesar A. Lopez-Morales
*Us Dept Of Justice - Civil Division*
contact info

Lisa Ann Olson
*Us Dept Of Justice - Civil Division*
contact info

---

**Defendant**
Jeff Williamson

**Represented By**

Cesar A. Lopez-Morales
*Us Dept Of Justice - Civil Division*
contact info

Lisa Ann Olson
*Us Dept Of Justice - Civil Division*
contact info

**Plaintiff**
Jenny A

**Represented By**

David C Tierney
*Sacks Tierney PA*
contact info

Judith M Dworkin
*Sacks Tierney PA*
contact info

Emily Claire Curran-Huberty
*Munger Tolles & Olson Llp - Los Angeles, Ca*
contact info

Kathryn Ann Eidmann
*Public Counsel*
contact info

Elizabeth Song
*Public Counsel*
contact info

Bryan H Heckenlively
*Munger Tolles & Olson LLP*
contact info

Seth J Fortin
*Munger Tolles & Olson Llp - Los Angeles, Ca*
contact info

Mark Dale Rosenbaum
*Public Counsel*
contact info

Tara Ford
*Native American Disability Law Center*
contact info

Maria Martinez Sanchez
*Aclu - Albuquerque, Nm*
contact info

Anne Morgan Hudson-Price
*Public Counsel*
contact info

Alexis Marie DeLaCruz
*Native American Disability Law Center*
contact info

Elisabeth Virginia Bechtold
*Aclu - Albuquerque, Nm*
<u>contact info</u>

Bradley S Phillips
*Munger Tolles & Olson Llp - Los Angeles, Ca*
<u>contact info</u>

**Plaintiff**
Jeremy A

**Represented By**

David C Tierney
*Sacks Tierney PA*
<u>contact info</u>

Judith M Dworkin
*Sacks Tierney PA*
<u>contact info</u>

Emily Claire Curran-Huberty
*Munger Tolles & Olson Llp - Los Angeles, Ca*
<u>contact info</u>

Kathryn Ann Eidmann
*Public Counsel*
<u>contact info</u>

Elizabeth Song
*Public Counsel*
<u>contact info</u>

Bryan H Heckenlively
*Munger Tolles & Olson LLP*
<u>contact info</u>

Seth J Fortin
*Munger Tolles & Olson Llp - Los Angeles, Ca*
<u>contact info</u>

Mark Dale Rosenbaum
*Public Counsel*
<u>contact info</u>

Tara Ford
*Native American Disability Law Center*
<u>contact info</u>

Maria Martinez Sanchez
*Aclu - Albuquerque, Nm*
<u>contact info</u>

Anne Morgan Hudson-Price
*Public Counsel*
<u>contact info</u>

Alexis Marie DeLaCruz
*Native American Disability Law Center*
<u>contact info</u>

9/17/19, 12:33 PM

Elisabeth Virginia Bechtold
*Aclu - Albuquerque, Nm*
contact info

Bradley S Phillips
*Munger Tolles & Olson Llp - Los Angeles, Ca*
contact info

**Plaintiff**
Jordan A

**Represented By**

David C Tierney
*Sacks Tierney PA*
<u>contact info</u>

Judith M Dworkin
*Sacks Tierney PA*
<u>contact info</u>

Emily Claire Curran-Huberty
*Munger Tolles & Olson Llp - Los Angeles, Ca*
<u>contact info</u>

Kathryn Ann Eidmann
*Public Counsel*
<u>contact info</u>

Elizabeth Song
*Public Counsel*
<u>contact info</u>

Bryan H Heckenlively
*Munger Tolles & Olson LLP*
<u>contact info</u>

Seth J Fortin
*Munger Tolles & Olson Llp - Los Angeles, Ca*
<u>contact info</u>

Mark Dale Rosenbaum
*Public Counsel*
<u>contact info</u>

Tara Ford
*Native American Disability Law Center*
<u>contact info</u>

Maria Martinez Sanchez
*Aclu - Albuquerque, Nm*
<u>contact info</u>

Anne Morgan Hudson-Price
*Public Counsel*
<u>contact info</u>

Alexis Marie DeLaCruz
*Native American Disability Law Center*
<u>contact info</u>

Elisabeth Virginia Bechtold
*Aclu - Albuquerque, Nm*
contact info

Bradley S Phillips
*Munger Tolles & Olson Llp - Los Angeles, Ca*
contact info

Case: 1:19-cv-06459 Document #: 1 Filed: 09/27/19 Page 34 of 64 PageID #:34

**Plaintiff**
Stephen C

**Represented By**

David C Tierney
*Sacks Tierney PA*
<u>contact info</u>

Judith M Dworkin
*Sacks Tierney PA*
<u>contact info</u>

Emily Claire Curran-Huberty
*Munger Tolles & Olson Llp - Los Angeles, Ca*
<u>contact info</u>

Kathryn Ann Eidmann
*Public Counsel*
<u>contact info</u>

Elizabeth Song
*Public Counsel*
<u>contact info</u>

Bryan H Heckenlively
*Munger Tolles & Olson LLP*
<u>contact info</u>

Seth J Fortin
*Munger Tolles & Olson Llp - Los Angeles, Ca*
<u>contact info</u>

Mark Dale Rosenbaum
*Public Counsel*
<u>contact info</u>

Tara Ford
*Native American Disability Law Center*
<u>contact info</u>

Maria Martinez Sanchez
*Aclu - Albuquerque, Nm*
<u>contact info</u>

Anne Morgan Hudson-Price
*Public Counsel*
<u>contact info</u>

Alexis Marie DeLaCruz
*Native American Disability Law Center*
<u>contact info</u>

Elisabeth Virginia Bechtold
*Aclu - Albuquerque, Nm*
contact info

Bradley S Phillips
*Munger Tolles & Olson Llp - Los Angeles, Ca*
contact info

**Plaintiff**

Anna D

**Represented By**

David C Tierney
*Sacks Tierney PA*
contact info

Judith M Dworkin
*Sacks Tierney PA*
contact info

Emily Claire Curran-Huberty
*Munger Tolles & Olson Llp - Los Angeles, Ca*
contact info

Kathryn Ann Eidmann
*Public Counsel*
contact info

Elizabeth Song
*Public Counsel*
contact info

Bryan H Heckenlively
*Munger Tolles & Olson LLP*
contact info

Seth J Fortin
*Munger Tolles & Olson Llp - Los Angeles, Ca*
contact info

Mark Dale Rosenbaum
*Public Counsel*
contact info

Tara Ford
*Native American Disability Law Center*
contact info

Maria Martinez Sanchez
*Aclu - Albuquerque, Nm*
contact info

Anne Morgan Hudson-Price
*Public Counsel*
contact info

Alexis Marie DeLaCruz
*Native American Disability Law Center*
contact info

Elisabeth Virginia Bechtold
*Aclu - Albuquerque, Nm*
contact info

Bradley S Phillips
*Munger Tolles & Olson Llp - Los Angeles, Ca*
contact info

---

**Plaintiff**
Native American Disability Law Center

**Represented By**

David C Tierney
*Sacks Tierney PA*
contact info

Judith M Dworkin
*Sacks Tierney PA*
contact info

Alexis Marie DeLaCruz
*Native American Disability Law Center*
contact info

Emily Claire Curran-Huberty
*Munger Tolles & Olson Llp - Los Angeles, Ca*
contact info

**Plaintiff**
Durell P

**Represented By**

David C Tierney
*Sacks Tierney PA*
contact info

Judith M Dworkin
*Sacks Tierney PA*
contact info

Emily Claire Curran-Huberty
*Munger Tolles & Olson Llp - Los Angeles, Ca*
contact info

Kathryn Ann Eidmann
*Public Counsel*
contact info

Elizabeth Song
*Public Counsel*
contact info

Bryan H Heckenlively
*Munger Tolles & Olson LLP*
contact info

Seth J Fortin
*Munger Tolles & Olson Llp - Los Angeles, Ca*
contact info

Mark Dale Rosenbaum
*Public Counsel*
contact info

Tara Ford
*Native American Disability Law Center*
contact info

Maria Martinez Sanchez
*Aclu - Albuquerque, Nm*
contact info

Anne Morgan Hudson-Price
*Public Counsel*
contact info

Alexis Marie DeLaCruz
*Native American Disability Law Center*
contact info

Elisabeth Virginia Bechtold
*Aclu - Albuquerque, Nm*
contact info

Bradley S Phillips
*Munger Tolles & Olson Llp - Los Angeles, Ca*
contact info

**Plaintiff**

Taylor P

**Represented By**

David C Tierney
*Sacks Tierney PA*
contact info

Judith M Dworkin
*Sacks Tierney PA*
contact info

Emily Claire Curran-Huberty
*Munger Tolles & Olson Llp - Los Angeles, Ca*
contact info

Kathryn Ann Eidmann
*Public Counsel*
contact info

Elizabeth Song
*Public Counsel*
contact info

Bryan H Heckenlively
*Munger Tolles & Olson LLP*
contact info

Seth J Fortin
*Munger Tolles & Olson Llp - Los Angeles, Ca*
contact info

Mark Dale Rosenbaum
*Public Counsel*
contact info

Tara Ford
*Native American Disability Law Center*
contact info

Maria Martinez Sanchez
*Aclu - Albuquerque, Nm*
contact info

Anne Morgan Hudson-Price
*Public Counsel*
contact info

Alexis Marie DeLaCruz
*Native American Disability Law Center*
contact info

Case: 1:19-cv-00459 Document #: 1 Filed: 09/27/19 Page 41 of 64 PageID #:41

Elisabeth Virginia Bechtold
*Aclu - Albuquerque, Nm*
<u>contact info</u>

Bradley S Phillips
*Munger Tolles & Olson Llp - Los Angeles, Ca*
<u>contact info</u>

**Plaintiff**
Leo R

**Represented By**

David C Tierney
*Sacks Tierney PA*
<u>contact info</u>

Judith M Dworkin
*Sacks Tierney PA*
<u>contact info</u>

Emily Claire Curran-Huberty
*Munger Tolles & Olson Llp - Los Angeles, Ca*
<u>contact info</u>

Kathryn Ann Eidmann
*Public Counsel*
<u>contact info</u>

Elizabeth Song
*Public Counsel*
<u>contact info</u>

Bryan H Heckenlively
*Munger Tolles & Olson LLP*
<u>contact info</u>

Seth J Fortin
*Munger Tolles & Olson Llp - Los Angeles, Ca*
<u>contact info</u>

Mark Dale Rosenbaum
*Public Counsel*
<u>contact info</u>

Tara Ford
*Native American Disability Law Center*
<u>contact info</u>

Maria Martinez Sanchez
*Aclu - Albuquerque, Nm*
<u>contact info</u>

Anne Morgan Hudson-Price
*Public Counsel*
<u>contact info</u>

Alexis Marie DeLaCruz
*Native American Disability Law Center*
<u>contact info</u>

Elisabeth Virginia Bechtold
*Aclu - Albuquerque, Nm*
contact info

Bradley S Phillips
*Munger Tolles & Olson Llp - Los Angeles, Ca*
contact info

**Plaintiff**
Levi R

**Represented By**

David C Tierney
*Sacks Tierney PA*
<u>contact info</u>

Judith M Dworkin
*Sacks Tierney PA*
<u>contact info</u>

Emily Claire Curran-Huberty
*Munger Tolles & Olson Llp - Los Angeles, Ca*
<u>contact info</u>

Kathryn Ann Eidmann
*Public Counsel*
<u>contact info</u>

Elizabeth Song
*Public Counsel*
<u>contact info</u>

Bryan H Heckenlively
*Munger Tolles & Olson LLP*
<u>contact info</u>

Seth J Fortin
*Munger Tolles & Olson Llp - Los Angeles, Ca*
<u>contact info</u>

Mark Dale Rosenbaum
*Public Counsel*
<u>contact info</u>

Tara Ford
*Native American Disability Law Center*
<u>contact info</u>

Maria Martinez Sanchez
*Aclu - Albuquerque, Nm*
<u>contact info</u>

Anne Morgan Hudson-Price
*Public Counsel*
<u>contact info</u>

Alexis Marie DeLaCruz
*Native American Disability Law Center*
<u>contact info</u>

Elisabeth Virginia Bechtold
*Aclu - Albuquerque, Nm*
contact info

Bradley S Phillips
*Munger Tolles & Olson Llp - Los Angeles, Ca*
contact info

---

**TERMINATED PARTIES**

**Defendant**
Sally Jewell
Terminated: 06/02/2017

**Represented By**
Cesar A. Lopez-Morales
*Us Dept Of Justice - Civil Division*
contact info

Lisa Ann Olson
*Us Dept Of Justice - Civil Division*
contact info

---

**Defendant**
Lawrence Roberts
Terminated: 06/02/2017

**Represented By**
Cesar A. Lopez-Morales
*Us Dept Of Justice - Civil Division*
contact info

Lisa Ann Olson
*Us Dept Of Justice - Civil Division*
contact info

---

Docket last updated: 10 hours ago

---

## Thursday, August 01, 2019

**205** | 📄 | notice | Notice of Attorney Withdrawal (No Longer with Firm Only) | Thu 12:22 PM

NOTICE of Attorney Withdrawal of Cesar A. Lopez-Morales as Counsel for Defendants filed by Cesar A. Lopez-Morales. (Lopez-Morales, Cesar)

# EXHIBIT F

Various articles about the
lawsuit filed by Havasupai School students.

Last article is a story about me;
regarding the hardship/injustice faced
by my students and me.

# *Barely Two R's Are Taught at School That Led Tribe to Sue U.S.*



Image
Havasupai Elementary is in a place so remote it is reachable only by helicopter or along eight steep miles on foot or horseback.CreditCreditCaitlin O'Hara for The New York Times

**By Fernanda Santos**

- Jan. 23, 2017

SUPAI, Ariz. — Students at Havasupai Elementary, the only school in this tribal village near Grand Canyon National Park, say they don't have a regular schedule of science and social studies classes, or gym or art classes, either. Often there are not enough teachers, they say.

The children — in kindergarten through eighth grade — learn mostly reading and math, though barely. In the most recent evaluation made public, they tested at the first and third percentile, well below every other school on Indian reservations, already among the worst in the country.

The abysmal test scores are highlighted in a federal lawsuit filed this month against the government by members of the Havasupai Tribe on behalf of nine students at the school. The tribe, a dwindling nation of 730, says the United States has reneged on its legal duty to educate their children by, among other things, allowing a janitor and a secretary to fill in for absent teachers, and by failing to provide special-education services and enough books for all students.

Preschoolers learn the language of their ancestors through colorful pictures arranged side by side on the walls.CreditCaitlin O'Hara for The New York Times
"It's frankly a disgrace that these conditions exist in schools that are run by the federal government and have existed for many years," said Kathryn Eidmann, a lawyer at Public Counsel, a law firm in Los Angeles that joined the Native American Disability Law Center and other groups to represent the students in the lawsuit.

ADVERTISEMENT

Reached by email, Jeff Williamson, principal of Havasupai Elementary, declined to comment.

Tribal schools like Havasupai Elementary are overseen by the Interior Department, whose secretary under the Obama administration, Sally Jewell, once called them "an embarrassment" because of their dismal conditions and performance. In an exit memo detailing the state of her agency's portfolio, she deemed the education and welfare of American Indian youths as "perhaps the area that demands the most attention from the next administration and Congress."

Though the legal action deals with conditions at Havasupai Elementary, the problems can be found across the entire system of Native American schools. The case, the students' lawyers said, is at once a statement of the historic failures that persisted under President Barack Obama and a warning to President Trump that the tribe will not allow its needs to be forgotten.


Image

In the most recent evaluation made public, Havasupai students tested at the first and third percentile, well below every other school on Indian reservations.CreditCaitlin O'Hara for The New York Times

**Editors' Picks**

The position of the Trump administration on these schools is unclear; officials at the Interior Department did not immediately respond to requests for comment on Monday.

After visiting the Standing Rock Sioux Reservation in North Dakota while president in 2014, Mr. Obama pledged to break the cycle of poverty among indigenous children, in part by giving tribes a leading role in their education, which is something that many tribes have long asked for, as a matter of sovereignty.

His administration spent hundreds of millions of dollars to address decades of poor choices at the department's Bureau of Indian Education, which funds and operates Havasupai Elementary and 182 other tribal schools in 23 states. Some schools have been connected to high-speed internet or undergone critical repairs, though there is still a lot to be done.

A report by the department's inspector general, released in September, found mold and asbestos in common areas, faulty electrical systems, structural problems and other deficiencies in schools throughout the system.

In its effort to transfer more authority over schools to the tribes, the administration started a program to train indigenous teachers to teach in indigenous schools. Ahniwake Rose, executive director of the National Indian Education Association, an advocacy group, said this was an important first step.

Her hope, she said, is that the idea of choice, so fervently embraced by Betsy DeVos, who has been nominated as secretary of education by President Trump, ultimately translates into "giving tribes the choice to run their own schools."

Native American children have a large gap to bridge. In general, their schools are poor-performing. The high school graduation rate among those enrolled in bureau schools is 53 percent, nearly 30 points below the national average.

ADVERTISEMENT

Havasupai Elementary was closed for winter break on a recent daylong visit to this village, a place so remote that it is reachable only by helicopter or along eight steep miles on foot or horseback. The Havasupai Tribal Council, its governing body, was meeting in the dark because the power had been out on the reservation for almost a full day.

"We're not asking for a handout" for the schools, said Carletta Tilousi, a member of the council. "All we're asking is that the government fulfill its obligation and help us help our people."



Image

"We're not asking for a handout" for the schools, said Carletta Tilousi, a member of the Tribal Council. "All we're asking is that the government fulfill its obligation and help us help our people." CreditCaitlin O'Hara for The New York Times

The Havasupai are known as the people of the blue-green water, a nod to the turquoise falls that cascade from high up nearby mountains and that have turned this place into a tourist destination.

The water courses through the edge of the village along a skinny creek — a streak of Technicolor against red rocks and dirt. It is an enchantingly deceptive sight, masking needs and wants all around it: boarded-up homes, horses grazing on fields of empty bottles and dried grass.

Outside the Havasupai Head Start, a sign warns: "Head Start will not release any child or children to anyone intoxicated or under the influence." Inside, preschoolers learn the language of their ancestors through colorful pictures arranged side by side on the walls.

Havasupai Elementary sits on the other side of the helicopter landing zone, which doubles as the center of the village. The school occupies a single-story brick building between the cafe and lodge where tourists eat and sleep. In interviews, two former students said only clear bags were allowed inside the school to make it harder to smuggle in alcohol.

ADVERTISEMENT

At Havasupai, "you have eighth graders reading and writing on a second-, third-grade level," said Sheldon Manakaja, a council member who has a grandson at the school. "Our children, when they come out of this school system, they are way behind." He said students who misbehaved were routinely sent home, without a note of explanation or homework to make up for what they missed in class.



Image

Havasupai Elementary sits on the other side of the helicopter landing zone, which doubles as the center of the village.CreditCaitlin O'Hara for The New York Times

Debbie Uqualla, who has three grandchildren at the school, could not name a doctor, engineer or lawyer who had graduated from Havasupai Elementary. But she easily recalled the stories of children who had dropped out. Some of these children were her own.

Of her seven sons and daughters, all of whom attended Havasupai, four did not go to or graduate from high school, she said. One is unemployed. The youngest, who is 17, got pregnant and miscarried.

"For most of our people," Ms. Uqualla, 55, said while waiting her turn to fly out of the canyon so she could go grocery shopping, "high school is the last point, if you ever get there."



Image

Debbie Uqualla, who has three grandchildren at the school, said she could not name a doctor, engineer or lawyer it had produced.CreditCaitlin O'Hara for The New York Times

Among the plaintiffs in the case is a woman, identified in court papers as Laila R., who moved out of the reservation to give her sons a chance of a better education. The younger, who is 14, entered a new school in September, a month into eighth grade.

ADVERTISEMENT

In an interview near his home, he said it was only after he transferred that he read his first book in full, from "The Magic Tree House" series, which is suited for second grade.

When his mother told him that he could share with a reporter whatever else he wanted — "Freedom of speech — it's in the Constitution," she said — the boy turned to her and asked, "What's Constitution?"

*Correction: Jan. 23, 2017*

*An earlier version of this article, relying on outdated information, misstated the size of the Havasupai Tribe. It has 730 members, according to the lawsuit, not about 500.*

*Correction: Feb. 2, 2017*

*An article on Jan. 24 about a lawsuit filed against the federal government regarding the tribal school in Supai, Ariz., referred imprecisely to the actual filing. It was by several members of the Havasupai Tribe, not by the tribe itself.*

A version of this article appears in print on Jan. 23, 2017, Section A, Page 9 of the New York edition with the headline: Tribe Sues U.S. Over School That Barely Teaches Two R's. Order Reprints | Today's Paper | Subscribe

READ 153 COMMENTS

# Lawsuit against feds over 'dismal' Havasupai school can continue, judge rules

**Alden Woods**, The Republic | azcentral.com   Published 1:50 p.m. MT April 2, 2018 | **Updated 2:30 p.m. MT April 2, 2018**



*(Photo: Alden Woods)*

A lawsuit claiming the federal government "dismally failed" to provide education for students at an isolated school in the bottom of the Grand Canyon may continue, a judge ruled last week, keeping alive the potential to widen special-education access in hundreds of Native American schools.

Attorneys representing the government asked U.S District Judge Steven P. Logan to dismiss most of the lawsuit, which was filed by current and former students (/story/news/local/arizona/2017/01/18/lawsuit-claims-federal-government-systemically-deprived-havasupai-schoolkids-decent-education-arizona/96540656/) of Havasupai Elementary School, located in the tribal community on the Canyon floor.

Logan denied most of that request.

Lawyers for the students contend that Logan's ruling is the first time a federal court has recognized that the government may be responsible for managing the educational impacts of childhood trauma suffered by Native American children.

"This is a historic ruling," said Alexis DeLaCruz, an attorney with the Native American Disability Law Center, which is representing the students. "What he's saying is that the impacts of the childhood trauma and the adverse experiences that the children have experienced impact their major life activities."

In his 13-page order, Logan acknowledged that trauma and adversity can limit "major life activities" — learning, reading, concentrating, thinking and communicating — protected under Section 504 of the Rehabilitation Act.

Among other protections, Section 504 guarantees equal access to public education for all students with disabilities.

**READ MORE:**  A hidden tribe, a disastrous school, a cry for help (/story/news/local/arizona-best-reads/2017/03/15/havasupai-elementary-grand-canyon-supai/98355588/)

Logan also acknowledged that Havasupai Elementary's constant lack of teachers may be directly related to its failure to identify children with special-educational needs.

The school, located not far from the famous Havasupai Falls deep in the Canyon, serves the Havasupai Tribe, but is operated by the Bureau of Indian Education.

By all public measures, the school is the worst in the BIE's 183-school system. Its students test in the third percentile in math, and the first percentile in reading. School administrators regularly ignore special-education standards, providing no services to students with learning disabilities.

## Get the Law & Order newsletter in your inbox.

6 free articles left.
Only $39 for one year.

Your Email                                                                                          →

Zero percent of Havasupai Elementary students tested "proficient" in both English and math during the 2014-15 school year, school report cards reviewed by *The Arizona Republic* show.

About 20 percent of Havasupai Elementary students go on to graduate from high school.

The school is constantly understaffed. Administrators combine classes and have assigned school secretaries and a janitor to cover classrooms. Teachers who do move into the Canyon rarely stay more than one year, and employees who push for change are often forced out.

One teacher, Mary Beth Burke, filed a lawsuit of her own in May, alleging malicious hiring practices, violations of special-education procedures and harassment after she voiced complaints. Burke dropped the lawsuit in December after no lawyer would accept her case.

Havasupai Elementary is the only school in Supai, a tiny village isolated on the floor of the Grand Canyon. Supai is accessible only by helicopter or an eight-mile hike into the Canyon, where high levels of poverty, unemployment and substance abuse await.

**READ MORE:** At Havasupai school, fired teacher points to pattern of neglect (/story/news/local/arizona-best-reads/2017/09/18/grand-canyon-pattern-of-neglect-troubled-havasupai-tribe-school/571091001/)

"We're in the hole," one parent involved in the students' lawsuit said. "It's like they put us there, they said, 'OK, they're in the hole. Let's just leave them there, they're not going to say nothing. Let's just give them the least amount of education.' "

For more than a decade the tribe asked the government for help. When nothing changed, a group of students and parents in January 2017 sued the federal government.

Attorneys from the Department of Justice moved to dismiss parts of that lawsuit. They argued that five of the nine students had no legal standing because they no longer attend the school, and that exposure to trauma does not qualify as a disability that caused them to be denied services.



**A flier outside Havasupai Elementary School announces a spot on the tribe's school board. Because Havasupai School is run by the Bureau of Indian Education, the board has no real influence.** *(Photo: Alden Woods/The Republic)*

The government has not disputed the school's failures, and has already acknowledged the historic, cultural and socioeconomic adversity at the heart of the students' lawsuit.

"We take the allegations as true," U.S. Department of Justice attorney Cesar Lopez-Morales said in an October hearing. "Our only argument is that cer

6 free articles left.
Only $39 for one year.

Logan agreed with the government's argument over the former students' legal standing and ordered five of the plaintiffs be removed from the lawsuit. He also ordered that certain federal employees be removed from the suit's list of defendants.

The Bureau of Indian Education, Bureau of Indian Affairs and Department of the Interior did not respond to requests for comment. In the past, spokesmen from all three agencies have declined to comment on the lawsuit.

The case will soon move into the discovery phase, when the Bureau of Indian Education will be required to hand over documents and data about the school.

"We're very hopeful that with this decision, the federal government is going to be willing to come to the table and work with us to solve these issues," DeLaCruz said. "Our hope is our plaintiffs and all of the children attending the school will not be forced to wait."

**READ MORE:**

- Phoenix woman accused of using Taser to wake teen for Easter church service (/story/news/local/phoenix-breaking/2018/04/02/phoenix-woman-sharron-dobbins-accused-using-taser-wake-teen-easter-church-service/479030002/)
- Phoenix high school math teacher charged in drunken assault of teen, her mother (/story/news/local/peoria-breaking/2018/04/02/phoenix-high-school-math-teacher-ryan-prassas-charged-drunken-assault-teen-her-mother/478522002/)
- Credit union watches elderly woman's account drain, then taps it to pay off drug-using son's bogus charges (/story/news/local/arizona-investigations/2018/04/02/credit-union-watches-elderly-womans-account-drain-then-taps-pay-off-drug-using-sons-bogus-charges/439169002/)

Read or Share this story: https://azc.cc/2pZuiG6

6 free articles left.
Only $39 for one year.

Search ...
(/support-our-work)

 Support Us »

 (/)

# Major Victory for Native American Students in Stephen C. v. Bureau of Indian Education

02 April 2018  Published in  News and Events (/component/k2/itemlist/category/13-news-and-events)

The Federal District Court ruled that the Bureau of Indian Education must meet the educational needs of Native American students, including their mental health and wellness needs.

 Judge's Order (/images/PDFs/Stephen_C._MTD_Order.pdf)

 Final MTD Ruling Website Statement (/images/PDFs/FINAL.MTD_Ruling_Website_Statement_003_w._logo.pdf)

Case Web Site (http://unitefornativestudents.org/major-court-victory/)

More in this category: « Nizhoni Elementary placed under Corrective Action Plan (/component/k2/item/208-nizhoni-elementary-placed-under-corrective-action-plan) REQUEST FOR PUBLIC COMMENT » (/component/k2/item/212-request-for-public-comment)

© 2008-2016 Native American Disability Law Center • (800) 862-7271 • Contact Us (/contact-us) • Site Map (/site-map)

# At Havasupai school in Grand Canyon, fired teacher paints a pattern of neglect

A FORMER HAVASUPAI TEACHER WHO HOPED TO HELP STUDENTS IN A GRAND CANYON VILLAGE INSTEAD FOUND A SCHOOL THAT APPEARED TO BE FAILING A COMMUNITY.

*Alden Woods and (/staff/10050214/alden-woods)*

*Ricardo Cano (/staff/41371/ricardo-cano), The Republic | azcentral.com*

*Published 8:23 a.m. MT Sept. 18, 2017 | **Updated 9:51 a.m. MT Sept. 18, 2017***

SHARE THIS STORY

**5** free articles left. Create your account.

**Unlock special offers today.**
Register for FREE.

Register Now

az

SHARE

Pin
(//www.pinterest.com/pin/create/button/?
url=https%3A//www.azcentral.com/story/news/local/arizona-
best-
reads/2017/09/18/grand-
canyon-
pattern-
of-
neglect-
troubled-
havasupai-
tribe-
school/571091001/&media=https%3A%2F%2Fwww.gannett-
cdn.com%2F-
mm-
%2F72d7a379e79c1e2d3c2cb6f4c6c56235a664d809%2Fc%3D0-
373-
4032-
2651%2Flocal%2F-
%2Fmedia%2F2017%2F09%2F11%2FPhoenix%2FPhoenix%2F636407542848661252-
SchoolSign.JPG%3Fwidth%3D1600%26height%3D800%26fit%3Dcrop&description=A
former
Havasupai
teacher
who
hoped
to
help
students
in a
Grand

(http://www.facebook.com/share.php?
u=https%3A//www.azcentral.com/story/news/local/arizona-
best-
reads/2017/09/18/grand-
canyon-
pattern-
of-
neglect-
troubled-
havasupai-
tribe-
school/571091001/&image

cdn.com/-
mm-/727bc2d5c72b4618d
0-
3528-       Tweet
3024/local/-/
SchoolSign.JP

The school that was always desperate for teachers finally had one, and it needed her to start right away.

It was March 2016. The school year was almost over, and Havasupai Elementary School still didn't have a full staff. So as soon as Mary Beth Burke reached her apartment at the bottom of the Grand Canyon, Acting Principal Coleen Maldonado brought Burke a list of her new students.

The two women sat at a table surrounded by unopened suitcases. Burke watched Maldonado scribble notes next to students' names. An eighth-grade girl, Maldonado wrote, was "very smart." She warned that another eighth-grader was manipulative.

But Maldonado focused on the name of a seventh-grade boy who had fallen hopelessly behind. She scribbled one word: "Lawsuit."

*Stay away from the mother*, Burke recalled Maldonado saying. *Try to avoid the student.*

Like many students at Havasupai Elementary, the boy had been promised help that never came. His test scores ranked in the first percentile nationwide. ADHD and a learning disability made studies almost impossible. The school had ignored his mother's pleas for help, so she had contacted a lawyer.

Now Maldonado suggested Burke ignore one of her new students.

5 free articles left. Create your account
cipal's warning. In the classroom, she would work around slowly becoming the first teacher he liked.

Unlock special offers today.
Register for FREE.
rushed to the Grand Canyon soon saw firsthand many of nine Havasupai students and their parents to sue the federal failed generations of Havasupai students has resisted

Register Now

SHARE

reform, refused to offer services for special education or mental health and punished employees who push for change.

**PREVIOUSLY:** A hidden tribe, a disastrous school, a cry for help (https://www.azcentral.com/story/news/local/arizona-best-reads/2017/03/15/havasupai-elementary-grand-canyon-supai/98355588/)

This portrait of dysfunction at Havasupai Elementary is based on hundreds of pages of internal documents and federal court filings, as well as interviews with Burke and a dozen students, parents, government employees and former school staff.

School leaders did not appear to take seriously Burke's repeated alerts about the mental well-being of a student who threatened to kill the new teacher and expressed suicidal thoughts. Burke's suggestion of additional services for the "lawsuit" student's special needs ended with a reprimand from Maldonado, who told her such services would cost the school more money.

Two months after she arrived in Supai, Burke emailed BIE Associate Deputy Director Tony Dearman, who oversaw all bureau-operated schools.

Burke wrote that she planned to file a complaint against Maldonado and the school. She accused the principal of retaliating against her and asked for the name of Maldonado's direct supervisor.

Dearman responded 23 minutes later, copying his reply to the superintendent overseeing Havasupai Elementary.

"I am sure you will receive a response soon," Dearman wrote.

Four days later, Burke was fired.

## A SCHOOL FAILING A COMMUNITY

The tiny Havasupai Tribe's only school is the worst in a Bureau of Indian Education system that Congress once called "a national disgrace." It has few textbooks and only a small library. There are no clubs or sports teams, no choir or art programs. Students with learning disabilities are often just sent home. Classes end at noon most Fridays so teachers can leave the Canyon early.

The school teaches only English and math but ranks last among all BIE schools in both subjects: Its students test in the first percentile in reading and the third percentile in math.

Since the federal government took over the school in 2002, Havasupai Elementary has only lagged further behind, locked away from the outside world by the rocky canyon walls.

Supai is accessible only by helicopter or an eight-mile hike down the face of the Grand Canyon. Fewer than half of the tribe's 639 members live in the village, where there is one store, one health clinic and one school.

"We're in the hole," one parent involved in the students' lawsuit said. "It's like they put us there, they said, 'OK, they're in the hole. Let's just leave them there, they're not going to say nothing. Let's just give them the least amount of education.' "

Havasupai students and parents alleged in that lawsuit, filed in January 2017, that the U.S. government "dismally failed" to provide the education it was legally obligated to give (https://www.azcentral.com/story/news/local/arizona/2017/01/18/lawsuit-claims-federal-government-systemically-deprived-havasupai-schoolkids-decent-education-arizona/96540656/) all Native children.

5 free articles left. Create your account

**Unlock special offers today.**
Register for FREE.

Register Now

a disadvantage: Just 69 percent graduate from high school, average, according to BIE data. The only group of students ting are Native students in BIE schools, who graduate at a

ool, about 20 percent of students go on to graduate from

az

SHARE

The federal government has twice asked a judge to dismiss parts of that lawsuit. Its attorneys argued that some of the students could not sue because they no longer attended Havasupai Elementary School, and that "exposure to adversity and trauma is insufficient to establish that plaintiffs are disabled individuals who were denied benefits solely by reason of any alleged disability."

U.S. District Judge Steven P. Logan will hear oral arguments in Phoenix on October 24.

**MORE:** Read the complaint filed by Havasupai students and their families (http://www.nativedisabilitylaw.org/images/press-release/COMPLAINT.pdf)

Dearman, who in November 2016 was appointed director of the Bureau of Indian Education, declined to be interviewed for this story and did not respond to written questions.

Nedra Darling, a spokeswoman for the Department of Interior's Bureau of Indian Affairs, which oversees BIE, said in an email that the Department of Interior does not comment on pending litigation. Darling said Dearman "is aware of all lawsuits pending against the BIE."

Reached by *The Republic*, Maldonado said she could not comment on Burke's allegations because it would violate the Federal Education Rights and Privacy Act.

## 'JUST HANG IN THERE'

When Maldonado first called Burke from the bottom of the Grand Canyon, she told her three things: Havasupai Elementary needed a seventh- and eighth-grade teacher, the Havasupai Tribe wanted somebody who would stay long term, and everybody was in a hurry.

The 2015-16 school year had started three weeks late because the school's staff was even thinner than usual. When classes finally began, students arrived to classrooms led by teachers who sometimes rotated in and out of Supai on two-week assignments. The school janitor and secretary each covered a class. There was no principal, so Maldonado filled in but kept teaching.

So began another year in which Havasupai children learned almost nothing.

The seventh- and eighth-grade teaching job was still open in March. A lifelong teacher who had just returned to America from a stint overseas, Burke wanted a job that would last until her retirement. So she flew to Phoenix, where an employee picked her up for the five-hour drive to the Grand Canyon. The trek down to the village was her first.

Burke was ready to start the next day. But after she arrived in Supai, she was told that neither her background check nor her contract had been finished, leaving her jobless for almost a week.

She complained to BIE Human Resources specialist Evelyn Begaye, who told her that Maldonado had repeatedly skirted hiring rules in the past.

"We all know she has been doing things out of ─ d her this ─il. "Just hang in



**Mary Beth Burke was hoping her job at Havasupai Elementary School at the Grand Canyon would last until her retirement. She was fired after two months.**
*(Photo: Faisal Al-Mutairi/Special for The Republic)*

Supai was brief.

5 free articles left. Create your account

**Unlock special offers today.**
Register for FREE.

Register Now

az

SHARE

She filed a lawsuit of her own in May 2017, accusing the BIE, Maldonado and an assortment of school staff of knowingly violating established hiring practices, ignoring the needs of students with disabilities and creating a hostile work environment from which Burke was eventually fired.

The lawsuit names 13 defendants, including Dearman, Maldonado, Superintendent Jimmy Hastings, the Bureau of Indian Education and the United States Department of the Interior. In the complaint, Burke asks for her firing to be overturned, for the five years' pay she claimed to have been promised and for "punitive damages to the greatest amount allowable by law."

## A SYSTEM UNABLE TO HELP

Once in the classroom, Burke started to understand the issues that would be cited in the two lawsuits.

Teachers at Havasupai Elementary lacked common materials or a full curriculum. Special education was sometimes no more than a teacher writing down a student's every move. A standardized test required in all Arizona schools was scheduled, then never given.

Another former school employee confirmed Burke's claims in an interview with *The Arizona Republic*. The BIE administration often did not respond to reports of violations at Havasupai Elementary, the employee said.

It's not just an issue in Supai. Similar problems with school oversight and accountability have appeared across BIE's 183-school system.

The bureau's records are often scattershot. *The Arizona Republic*'s request to the BIE for a list of Havasupai Elementary School's former principals returned a list of employees at a different Havasupai Elementary School in Lake Havasu City, a public school that isn't part of the BIE system.

> "It's not just at one level," said a former school employee, who spoke anonymously because of fears of more retaliation. "The whole thing was messed up."

Parents and tribal leaders have begged for help for years, desperate to save what they see as a lost generation. And yet the BIE, which claims to be in a period of drastic reform, can show no evidence it has improved the school.

The mother of the "lawsuit" student, referred to in court documents by the pseudonym Laila R., embarked on a solo crusade. She earned a seat on the school board and sent letters higher and higher up the BIE bureaucracy. When no help came, she emailed a lawyer with the Native American Disability Law Center, which helped her begin the January lawsuit.

Havasupai Tribe leaders have flown to Washington, D.C., to lobby BIE officials directly. They were promised change, and then none came.

A former BIE director even visited the school in person to meet with Chairman Don Watahomigie. Still, nothing improved.

"They just talk with the principal and leave," said Leota Watahomigie, a Supai resident who worked at the school until June. "They want to get out of here, like everybody else."

## 'THAT LADY IS COOL'

Burke knew of the student marked by Maldonado's "lawsuit" note before that first meeting. flight into Supai, a school employee pointed at a young boy

the employee told her. Burke walked toward the boy to hid behind a wooden shack.

5 free articles left. Create your account.

**Unlock special offers today.**
Register for FREE.

Register Now

az

SHARE

Levi R., as he's called in court documents, had never liked a teacher before. As far as he knew, no teacher had ever liked him — until Mary Beth Burke. Against Maldonado's day-one warning, Burke kept an eye on Laila's son.

"That lady is cool," Levi told his mother after school one day. For the first time, a teacher seemed to care about him, focused not on whether he was going to disrupt the class but on his education. Burke let him speak. She let him rock back and forth in his desk, which other teachers had forbidden, because she saw it soothed his ADHD.

The only barrier to his success, Burke thought, was handwriting. Levi's writing was slow and painful, and with every misplaced letter his frustration grew. But that could be fixed.

**SHARE YOUR EXPERIENCE:** Help shed light on the Bureau of Indian Education (https://arizona-republic.forms.fm/bureau-of-indian-education)

Under federal law, every student with a disability is required to have an Individualized Education Program, a document that describes the student's disabilities and the specific plans to overcome them. Every IEP must be reviewed at an annual meeting between parents and the teachers who oversee special education.

A month after she started, Burke sat at a table with another teacher, Maldonado and Levi's mother.

"I really enjoy having your child in my classroom," Burke said, speaking first. "The only thing I've noticed is that he hates handwriting and I think we should try to get him some occupational therapy."

Before Laila could respond, Maldonado and the other teacher turned to Burke, their anger rising.

"You have no right," Burke recalled Maldonado saying, upset that a teacher would suggest the service directly to a parent.

After the meeting, Maldonado kept Burke in her office to chastise her. Bringing an occupational therapist into the Canyon could cost the school money, Burke recalled being told. She added that Levi's services were already detailed in his IEP.

But Burke had only been allowed to read a portion of Levi's lengthy IEP.

## A COMPLAINT, A DISMISSAL

When the 2015-16 school year started, Havasupai Elementary's IEPs were in shambles. Papers were strewn across desks, or shoved into filing cabinets, or stacked in sloppily constructed piles. No student's IEP was all in one place, and it took the new staff almost a month to piece them back together, a former school employee said.

"I'd never seen anything like that before," said the former employee, who spoke on the condition of anonymity because of fears of retribution from the BIE.

Once complete, IEPs were seldom followed. About half of Havasupai Elementary's students have recognized disabilities, and yet few received any services to address them.

The school's special-education decisions went through Maldonado, a classroom teacher serving as acting principal. Arizona's public teacher-certification database lists a substitute teacher's license under the name "Coleen K. Maldonado" but displays nothing to indicate special-education

5 free articles left. Create your account.

**Unlock special offers today.**
Register for FREE.

Register Now

az

employee said, did

lucation

er it was wrong, she

ly," the former

The former employee tried multiple times to alert BIE administrators of special-education violations. The employee sent at least two emails to the bureau's head of special education, Gloria Yepa, and received no response.

A few months later, the employee tried again, calling BIE administrators directly to discuss the violations. That resulted in a voicemail on Yepa's direct line. The call was never returned.

Days later, the employee was fired.

**READ:**  Arizona tribe warning: 'Your language is dying'
(https://www.azcentral.com/story/news/local/pinal-best-reads/2017/02/21/if-you-teach-people-their-own-ancient-language-can-they-keep-alive-akimel-ootham-gila-river/97558870/)



**Mary Beth Burke filed a lawsuit against Havasupai Elementary School staff and the Bureau of Indian Education in May. She plans to represent herself.**
*(Photo: Faisal Al-Mutairi/Special for The Republic)*

The school's lack of special-education programs started well before Maldonado's tenure as acting principal. For years the staff has lacked enough counselors, special-education teachers and mental-health providers. Often there weren't enough people on staff to hold the annual IEP meetings.

One sixth-grade student with ADHD had missed so much school that he could barely read or write.

Another student with an IEP spent his days crouched at a tiny table in the Havasupai Head Start preschool because he had been banned from attending school. He spent a week in an adult prison in Parker, four hours away, for pushing a teacher.

BIE's own data does not reflect those problems. In 2014, a "Special Education Level of Determination" report, which outlines whether schools meet certain standards for special education, gave Havasupai Elementary School eight points on a 10-point scale. "Meets requirements," the BIE determined. No intervention necessary.

Levi never received occupational therapy.

## A THREAT GOES UNANSWERED

A student threatened to kill Burke the morning of April 13, 2016. It was her fifth day teaching at Havasupai Elementary School.

The student yelled obscenities inside the classroom and kicked furniture, according to a report Burke wrote afterward. The threat came when Burke asked the student to stop.

Fourteen days later, that same student threatened suicide.

Burke raised repeated concerns to Maldonado about the student's well-being in between those two incidents. She'd written an incident report after the student's first threat against her.

A teacher who had filled in for Maldonado that day refused to accept the report after asking Burke to rewrite it with it more specifics. Burke said the teacher, Catherine Muhammed, acknowledged the incident took place but told other teachers that Burke

5 free articles left. Create your account.

**Unlock special offers today.**
Register for FREE.

Register Now

az

reatens takeover of White Mountain Apache programs
ory/news/local/arizona-investigations/2017/01/17/white-a-threatens-takeover/96418624/)

Burke wrote another report the following week, after the student behaved erratically in class during a fire drill.

Later that evening, Burke emailed Maldonado: "At this time, I consider (the student) a threat ... I am requesting immediate intervention for (the student's) protection and for the protection of others."

Burke wrote that the student recalled being taken to the clinic by a grandmother, though Burke later said she "didn't know if this story is accurate or not, as it came from the student."

But as the student spoke to Burke, she wrote in the email, she noticed the student "did not appear well" and kept bobbing back and forth. Burke had told a classroom aide she felt the student needed medical attention.

Maldonado took the student out of Burke's classroom that day after the student cursed repeatedly and threw a desk on the floor.

Burke asked Maldonado in the email whether the school knew if the student had actually "made a suicide threat ... today and if (the student) was taken for medical attention and treated."

"I hope (the student) receives assistance immediately," Burke wrote.

The next day, Burke said, Maldonado called her into her office and asked her, sarcastically, "Do you really think (the student) wants to kill you?"

Maldonado then told Burke the school was getting the student counseling services.

**READ:**  Arizona tribal leaders help students stay in school (https://www.azcentral.com/story/news/local/arizona/2016/01/06/arizona-native-american-students-struggle-tribal-leaders/78360994/)

It wasn't until two weeks after the initial threat — when the student publicly threatened self-harm — that the school's leadership took Burke's concerns about the student seriously and made an effort to address them, Burke said.

"It was escalating and escalating, and it was obvious the kid needed services," Burke told *The Republic*. "So I think the ball was dropped when they had a chance on April 13 to do something for that child, and for me. And they did not."

After being removed from class, the student was taken to the Indian Health Services clinic. A physician later told Burke that the student's wrists had cut marks.

When the physician asked her why the school hadn't referred the student to the clinic sooner, Burke pulled out copies of the email she sent to Maldonado, as well as the rejected incident report.

The physician photocopied the documents, and told Burke to bypass the school if the student needed help in the future.

## LAST DAYS OF A SHORT TENURE

Everybody had lemonade the day Burke was fired.

Her class spent the morning playing in Supai's June heat, and Burke placed chilled cans of lemonade on their desks. The students returned, and everybody was in a good mood, until Katherine Campbell walked into the classroom.

5 free articles left. Create your account.

**Unlock special offers today.**
Register for FREE.

Register Now

az

from the school, and Campbell had taken over as acting come into her office at noon, after the usual Friday early

ought, remembering the other teachers who had been om emptied, she collected her things and went to meet

Ten weeks after she arrived in Supai, Mary Beth Burke was fired.

"Specifically, your termination is due to unprofessional conduct," her termination letter read.

A handwritten note was scribbled below: "Employee was directed not to disclose action with other school staff, and not to speak about the school in a derogatory fashion."

Notes and documents sent to BIE's Human Resources department outlined what conduct Maldonado found unprofessional. The list included Burke's questions about Maldonado's qualifications and authority, an argument about a gate left unlocked, the way she "responded negatively" to a middle-of-the-night "well check" that Burke viewed as harassment and Burke's negative comments about the school to a teacher who once visited Supai.

It cited the IEP meeting in which Burke suggested occupational therapy for Levi, which "implicated the school to provide evaluation and costs had the parent accepted or then required follow up."

The letter also referenced the student's threats stating that Burke never filed a "critical incident report" despite being "informed to complete it in writing on several occasions."

There would be no exit interview.

"In the end, I believe, they got rid of me for complaining about the way I was hired, for special-ed violations when I advocated for children, and because of the gross mismanagement of the school," Burke said. "I had no other recourse but to file a federal complaint."

Almost immediately, Burke and Laila R. said, Maldonado and other BIE administrators began a campaign to get the teacher out of Supai. But Burke refused to leave until her final paycheck came through. So she stayed, even after her apartment's utilities were cut off and a federal police officer threatened charges if she didn't leave.

She spent her days wandering through the Canyon, exploring the sacred lands she was being forced out of. Tribal members stopped her on the dirt paths and thanked her for trying. The tribal council invited her to speak about the school.

She found Levi's mother, and they exchanged phone numbers. "If you ever need me for your lawsuit," she told Laila, "I'll be there for you."

Within a year, both women had filed lawsuits against Havasupai Elementary School administrators and the Bureau of Indian Education.

While on a hike, Burke crossed paths with Levi one last time. He asked why she had been fired.

She said she didn't know.

*Reach the reporters at awoods@arizonarepublic.com (mailto:awoods@arizonarepublic.com) and ricardo.cano@gannett.com (mailto:ricardo.cano@gannett.com).*

**SHARE YOUR EXPERIENCE:** Help shed light on the Bureau of Indian Education (https://arizona-republic.forms.fm/bureau-of-indian-education)

**READ MORE:**

New director to take over troubled Indian education agency
.../news/2016/11/02/new-director-take-over-troubled-indian-

5 free articles left. Create your account.

Unlock special offers today.
Register for FREE.

Register Now

al school in Arizona, talks upgrades
.../news/local/arizona/education/2016/01/14/secretary-
ona-talks-upgrades/78812978/)

az